**Not for Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MATTHEW LYNCH, | |
| **Plaintiff,** | Civil Action No.: 18-5398 (ES) (AME) |
| v. | **OPINION** |
| OFC. ALEXANDER HALE, *et al.*, | |
| **Defendants.** | |

**SALAS, DISTRICT JUDGE**

Before the Court are the motions to dismiss plaintiff Matthew Lynch's ("Plaintiff") amended complaint, (D.E. No. 53 ("Amended Complaint" or "Am. Compl.")), under Federal Rule of Civil Procedure 12(b)(6) filed by defendants CFG Health Systems, LLC ("CFG"), (D.E. No. 57 ("CFG Motion to Dismiss"); D.E. No. 57-2 ("CFG Mov. Brief")), and defendants Atlantic County, Alexander Hale, and Michael R. Kelly ("County Defendants"), (D.E. No. 65 ("County Defendants' Motion to Dismiss"); D.E. No. 65-1 ("Cnty. Defs. Mov. Br.")), respectively. Plaintiff has opposed both Motions to Dismiss. (D.E. No. 63 ("Opp'n Br. to CFG Mot. to Dismiss."); D.E. No. 66 ("Opp'n Br. to Cnty. Defs. Mot. to Dismiss")). CFG and County Defendants have filed reply briefs in further support of their respective Motions. (D.E. No. 64 ("CFG Reply Br."); D.E. No. 67 ("County Defs. Reply Brief" or "Cnty. Defs. Reply Br.")). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 28(b); L. Civ. R. 78.1(b). For the reasons set forth below, the CFG Motion to Dismiss is **GRANTED**, and the County Defendants' Motion to Dismiss is **DENIED**.

## I.    BACKGROUND[1]

On or about March 28, 2018,[2] Plaintiff, at that time a pretrial detainee incarcerated at Atlantic County Justice Facility ("ACJF"), filed a *pro se* complaint.  (D.E. No. 1 ("Complaint" or "Complaint")).   In his Complaint, Plaintiff names two defendants: Officer A. Hale (FNU), Corrections Officer, ACJF; and Geraldine Cohen, Warden, ACJF.  (*Id.* at 3, 10).   According to Plaintiff, Hale was deliberately indifferent to a serious medical need causing Plaintiff's permanent injury and failed to perform his duties as a corrections officer.  (*Id.* at 4).   Cohen allegedly failed to act in a supervisory capacity to protect Plaintiff from injury.  (*Id.*).

Plaintiff alleges that, on February 4, 2018, he suffered an opioid overdose.  (*Id.* at 5).  Plaintiff's cellmate (Leonard Allen) alerted Hale to the medical emergency and requested medical attention for Plaintiff.  (*Id.*).   Hale, who was making his rounds on the unit, approached the cell door and observed that Plaintiff was unconscious and had bodily fluids coming out of his mouth and nose.  (*Id.*).   "Officer Hale then commented to Leonard Allen, 'It looks like we have a junkie here, I'm not calling medical, lay down and let him die in peace.'"  (*Id.*).

The cellmate continued to bang on the cell door to alert other facility personnel.  (*Id.*).   An hour later, another corrections officer (M. Gazzero) entered the unit and saw Plaintiff's "lifeless body."  (*Id.*).   Medical personnel were summoned.  (*Id.*).   "First responders" administered Narcan to resuscitate Plaintiff, "who was literally dead at that point."  (*Id.*).

Plaintiff alleges that he suffered permanent injuries, including memory loss, seizures, high blood pressure, nerve damage to the tongue, and brain damage.  (*Id.*).

---

[1]    On a motion to dismiss, the Court accepts as true all well-pled facts in Plaintiff's pleadings. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022) (quoting *Umland v. PLANCO Fin. Servs, Inc.*, 542 F.3d 59, 64 (3d Cir. 2008)).

[2]    *See Burns v. Morton*, 134 F.3d 109, 113 (3d Cir. 1998) (holding that a *pro se* prisoner's filing is deemed filed at the moment he delivers it to prison officials for mailing to the district court).

With respect to Cohen, Plaintiff alleges in his Complaint that the warden violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to establish and/or enforce adequate facility policies to address drug overdoses or related medical emergencies and to discipline facility employees who violated established emergency protocols, resulting in Plaintiff's "adverse treatment." (*Id.* at 6).

For relief, Plaintiff requests: punitive damages in the amount of $950,000 from Hale; punitive damages in the amount of $1,500,000 from Cohen, and compensatory damages in the amount of $176,799.35. (*Id.* at 7).

On April 13, 2018, the Honorable Robert B. Kugler, U.S.D.J., denied Plaintiff's application to proceed *in forma pauperis* and ordered the Clerk of Court to administratively terminate this case. (D.E. No. 3 at 2). Plaintiff subsequently paid the full filing fee. On April 5, 2019, Judge Kugler reopened this matter, screened the Complaint pursuant to 28 U.S.C. § 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from suit, and concluded that dismissal was not warranted. (D.E. No. 6 at 1). Accordingly, Judge Kugler proceeded the Complaint. (*Id.*).

In an April 10, 2023 Order, the Honorable Matthew J. Skahill, U.S.M.J., observed that, although the case was filed in 2018, "it is 2023 and neither defendant has been served" because "[t]his case has been plagued by many delays, mainly due to Plaintiff's failure to notify the Court when he moved facilities." (D.E. No. 47 at 2). "Although Plaintiff finally returned the USM-285 forms to the Court two months ago [D.E. No. 40], the summonses were returned unexecuted because one defendant retired [Cohen] and the other no longer works at that facility [Hale] [D.E. Nos. 43–44]." (*Id.*). Finding that Plaintiff, who was incarcerated at that time at East Jersey State

Prison, lacked the ability to locate and serve the defendants, Magistrate Judge Skahill appointed *pro bono* counsel for the limited purpose of locating defendants and, as needed, completing and submitting the USM-285 forms necessary to issue and effectuate service of process. (*Id.* at 2–3).

On August 28, 2023, Plaintiff filed a *pro se* motion for leave to file an amended complaint. (D.E. No. 48 ("Motion for Leave to File Amended Complaint"); D.E. No. 48-1 ("Proposed Amended Complaint" or "Proposed Am. Compl.")).

On October 9, 2023, current counsel entered an appearance on Plaintiff's behalf. (D.E. No. 49).

On December 1, 2023, Magistrate Judge Skahill entered an Order terminating the *pro se* Motion for Leave to File Amended Complaint in light of the subsequent appearance of counsel; expanding the scope of *pro bono* counsel representation to include determining whether the addition of the proposed new defendants would be futile or otherwise impermissible and to assist Plaintiff with filing any amended complaint; directing Plaintiff's counsel to review the Proposed Amended Complaint and determine whether the proposed amendments were consistent with and supported by the legal principles governing Plaintiff's claims; ordering counsel to file a letter by December 29, 2023, informing the Court as to whether Plaintiff would renew his request to file an amended complaint; ordering that any amended complaint naming new defendants shall be filed by counsel by January 12, 2024; and ordering that the deadline to effectuate service of process shall be extended to February 29, 2024. (D.E. No. 51 ("December 1, 2023 Order" or "Dec. 1, 2023 Order") at 3–4)).

On December 29, 2023, counsel for Plaintiff filed a letter indicating her client's intent to renew the Motion for Leave to File Amended Complaint. (D.E. No. 52). The counseled Amended Complaint was filed on January 12, 2024. (D.E. No. 53).

The Amended Complaint names five defendants: (i) Atlantic County; (ii) Atlantic County Department of Public Safety – Division of Adult Detention) ("Division of Adult Detention"); (iii) Kelly, the Warden of the Atlantic County Jail (collectively with Atlantic County and the Division of Adult Detention, "Atlantic County Defendants"); (iv) Alexander Hale, a correctional officer at the Atlantic County Jail; and (v) CFG Health Systems, LLC, a limited liability company entrusted with providing health care services to pretrial detainees incarcerated at the Atlantic County Jail. (Am. Compl. ¶¶ 2–6). Warden Kelly is named in his official capacity, and Hale is sued in his individual capacity. (*Id.* ¶¶ 4–5).

According to the Amended Complaint, Plaintiff, a pretrial detainee incarcerated at the Atlantic County Jail, struggled with substance dependency and attended group counseling sessions at the facility. (*Id.* ¶ 11). In or around October 2017, Plaintiff learned he would no longer be allowed to participate in group sessions following a verbal altercation with another inmate (and Plaintiff was unsuccessful in his efforts to attend the sessions). (*Id.*). Illicit drugs are readily available to inmates, and drug consumption is commonplace within the facility, and Plaintiff was vulnerable to relapse. (*Id.* ¶ 12). Plaintiff experienced considerable difficulty managing his mental health and was reported as being a danger to himself. (*Id.*).

On the evening of February 5, 2018, Plaintiff overdosed on fentanyl and other narcotics. (*Id.* ¶ 13 (alleging that, by that point, Plaintiff had been incarcerated at the Atlantic County Jail for nearly two years)). Plaintiff's cellmate, Leonard Allen, alerted the officer on duty on the "bubble," Officer Alexander Hale, that Plaintiff was unconscious, incoherent, turning blue, and bodily fluids were coming out of his nose and mouth ("classic signs of overdose"). (*Id.* ¶ 14). Hale approached the cell and told Allen that "Plaintiff was a 'junkie' and to let him die in peace." (*Id.* ¶ 15). Accordingly, Hale refused to call for assistance or medical personnel. (*Id.*). Allen continued to

5

yell and bang on the cell door to alert another facility member of the situation. (*Id.* ¶ 16). Upon information and belief, Plaintiff's medical emergency persisted for approximately one hour before Allen got the attention of another corrections officer, and this officer alerted the medical department of the situation at approximately 12:02 a.m. on February 6, 2018. (*Id.* ¶ 17).

Two CFG employees, Registered Nurse Nick Smith ("RN Smith") and Licensed Practical Nurse Lauren Tucker ("LPN Tucker") responded to Plaintiff's cell to administer medical treatment, noting upon arrival that Plaintiff's skin was pale with bluish hues and cold to the touch, he was fully limp, unconscious, and nonreactive to stimuli, and there was approximately 30ml of dried blood around his nose and on the bedsheets. (*Id.* ¶¶ 18–19, 62). RN Smith alerted Sergeant James W. Allen to call 911 because Plaintiff required emergency treatment in a hospital. (*Id.* ¶ 20). RN Smith and LPN Tucker administered oxygen through a face mask and monitored Plaintiff's vitals. (*Id.* ¶ 21). After placing Plaintiff on a stretcher, RN Smith administered an electric shock with a defibrillator. (*Id.*). However, medical reports fail to indicate that either RN Smith or LPN Tucker administered Narcan (a medication countering the effects of opioid overdose) prior to transferring Plaintiff to the custody of Emergency Medical Services ("EMS") at 12:25 a.m. (*Id.* ¶ 22). EMS paramedics immediately administered Narcan, causing Plaintiff to regain consciousness (although he awoke in a frantic and agitated state, requiring sedation and intubation). (*Id.* ¶ 23).

Plaintiff suffered a severe stroke affecting the left temporal lobe of his brain, resulting in permanent injuries (short term memory loss, severe migraines, and a general sense of slowness and bodily weakness). (*Id.* ¶¶ 24–25). He required a ventilator for five (5) days and remained in the hospital for an additional three (3) days. (*Id.*).

According to the Amended Complaint, the Atlantic County Defendants have engaged in

6

pattern of willful blindness to the rampant drug trade within their facilities (and "as recently as this year" a corrections sergeant was indicted for directing two subordinates to ignore controlled substances found in a detainee's cell); Atlantic County Defendants personnel (including Hale, RN Smith, and LPN Tucker) lacked sufficient training and supervision concerning drug detection and prevention and reviving and treating overdose victims; it is a widely accepted practice within the medical and corrections community to administer Narcan immediately upon coming in contact with an individual experiencing a suspected overdose; and the Atlantic County Defendants knew that Plaintiff was particularly vulnerable to substance abuse as well as suicidal ideations but took inadequate measures to prevent a foreseeable incident (such as an overdose) from occurring. (*Id.* ¶¶ 26–27).

The Amended Complaint asserts five counts: (i) a 42 U.S.C. § 1983 ("Section 1983") claim against Hale for deliberate indifference to medical needs in violation of the Fourteenth Amendment of the United States Constitution (Count One): (ii) a Section 1983 claim against the Atlantic County Defendants for failure to train (Count Two); (iii) a Section 1983 *Monell* claim against the Atlantic County Defendants based on unconstitutional policies, practices, or customs (Count Three); (iv) a claim under the New Jersey Torts Claims Act for negligent failure to train and/or supervise against the Atlantic County Defendants (Count Four); and (v) a negligence claim against CFG (Count Five). (*Id.* ¶¶ 30–64).

In his prayer for relief, Plaintiff seeks a judicial finding that defendants committed acts and omissions violating the Fourteenth Amendment. (*Id.* at 12). As to Count One, Plaintiff requests a judgment against Hale for compensatory and punitive damages in excess of $150,000 and attorney's fees under 42 U.S.C. § 1988. (*Id.*). As to Counts Two, Three, and Four, Plaintiff seeks a judgment against the Atlantic County Defendants for compensatory damages in excess of

7

$150,000 (and, with respect to Counts Two and Three, reasonable attorney's fees).  (*Id.*).  Finally, with respect to Count Five, Plaintiff seeks a judgment against CFG for compensatory damages in excess of $150,000.  (*Id.*).

On February 8, 2024, CFG moved to dismiss the Amended Complaint.  (D.E. No. 57).  Plaintiff opposed the CFG Motion to Dismiss on February 23, 2024, (D.E. No. 63), and CFG replied on February 25, 2024, (D.E. No. 64).

The County Defendants filed their Motion to Dismiss on February 29, 2024, (D.E. No. 65), Plaintiff responded on March 15, 2024, (D.E. No. 66), and the County Defendants filed their Reply Brief on March 22, 2024, (D.E. No. 67).

This matter was reassigned from Judge Kugler to the Honorable Christine P. O'Hearn, U.S.D.J., on June 13, 2024.  (D.E. No. 68).  On June 21, 2024, the matter was reassigned to the Undersigned.  (D.E. No. 70).[3]

## II.    LEGAL STANDARD

A court properly grants a motion to dismiss under Rule 12(b)(6) "if, accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (citing *Bartholomew v. Fischl*, 782 F.2d 1148, 1152 (3d Cir. 1986)).

To survive a motion to dismiss under Rule 12(b)(6), the complaint must allege "'sufficient factual matter' to show that the claim is facially plausible."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing

---

[3]     A review of the docket shows that, on June 21, 2024, the two Motions to Dismiss were mistakenly terminated.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  Under Federal Rule of Civil Procedure 8, a complaint's claims must be supported by "a short and plain statement . . . showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "Each allegation must be simple, concise, and direct."  Fed. R. Civ. P. 8(d)(1).  The complaint must set forth the plaintiff's claims with enough specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555 (citation omitted). A complaint that merely "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and a complaint will not "suffice" if it provides only "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings."  *Burlington Coat Factory Litig.*, 114 F.3d at 1426 (citation omitted). Rather, "[i]n deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."  *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004) (citations omitted); *see also Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 493 (3d Cir. 2017) ("Ordinarily, a court may not consider documents outside the pleadings when deciding a motion to dismiss").  However, "a court may consider 'an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'"  *Fuller v. Rozlin Fin. Grp., Inc.*, No. 19-20608, 2020 WL 5036215, at *2 (D.N.J. Aug. 26, 2020) (citation omitted)).

*Pro se* pleadings are liberally construed in favor of the *pro se* litigant.  *See Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013); *Thakar v. Tan*, 372 F. App'x 325, 328 (3d

Cir. 2010).

A defendant moving to dismiss under Rule 12(b)(6) bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231–32 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

The Federal Rules of Civil Procedure technically require a defendant to plead the statute of limitations and other affirmative defenses in an answer, and not in a motion to dismiss. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). "However, Third Circuit law allows courts to dismiss a claim pursuant to Rule 12(b)(6) based on a statute of limitations defense, but only if 'the time alleged in the statement of a claim shows that the cause of action' is untimely." *Haar v. Ojelade*, No. 22-7595, 2026 WL 972920, at *3 (D.N.J. Apr. 10, 2026) (quoting *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (citation omitted)). "'If the [statute of limitations] bar is not apparent on the face of the complaint, then' a court may not use the statute of limitations as a 'basis for a dismissal . . . under Rule 12(b)(6).' *LabMD Inc. v. Boback*, 47 F.4th 164, 179 n.9 (3d Cir. 2022) (quoting *Robinson*, 313 F.3d at 135)." *Haar*, 2026 WL 972920, at *3 (alterations in original); *see also Schmidt*, 770 F.3d at 249.

## III.    DISCUSSION

CFG and the County Defendants argue that it is apparent on its face that the Amended Complaint violates the applicable statute of limitations. (CFG Mov. Br. at 3–6; Cnty. Defs. Mov. Br. at 5–6). It is undisputed that the Section 1983 claims in Counts One, Two, and Three as well as the state law negligence claims in Counts Four and Five are governed by a two-year statute of limitations; the opioid overdose occurred on February 4 (or 5), 2018; and the Amended Complaint was not filed until January 4, 2024, approximately six years after the overdose. However, Plaintiff

10

does argue that, "as Plaintiff filed his initial complaint within the applicable statute of limitations period, and the relevant inquiry thus becomes whether Plaintiff's recent amendment relates back to the initial time of filing" of the Complaint under Federal Rule of Civil Procedure 15(c)(1)(C). (Opp'n Br. to CFG Mot. to Dismiss at 2; Opp'n Br. to Cnty. Defs. Mot. to Dismiss at 4). According to Plaintiff, "[w]hether the relation back doctrine applies will depend at least on part on whether the newly added defendant received adequate notice of the complaint, which would likely require facts external to the complaint to resolve." (Opp'n Br. to CFG Mot. to Dismiss at 3). Plaintiff additionally asserts that the relation-back doctrine clearly applies in this case. (Opp'n Br. to CFG Mot. to Dismiss at 2–5; Opp'n Br. to Cnty. Defs. Mot. to Dismiss at 3–7).

"[T]he relation-back doctrine under Rule 15(c) allows a court to treat a later-filed amended pleading as if it had been filed at the time of the initial pleading." *Moore v. Walton*, 96 F.4th 616, 623 (3d Cir. 2024) (quoting *Se. Pa. Transp. Auth. v. Orrstown Fin. Servs. Inc.*, 12 F.4th 337, 344 (3d Cir. 2021)). This doctrine "ameliorate[s] the running of the statute of limitations." *Id.* (quoting *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 193 (3d Cir. 2001)). Rule 15(c)(1)(C) authorizes an amendment to a pleading that "changes the party or the naming of the party against whom a claim is asserted" if three requirements are satisfied:

> *[F]irst*, the claim against the newly added defendant must arise "out of the conduct, transaction, or occurrence set out . . . in the original pleading," Fed. R. Civ. P. 15(c)(1)(B); *accord* Fed. R. Civ. P. 15(c)(1)(C) (requiring satisfaction of Rule 15(c)(1)(B)); *second*, the newly named party must have "received such notice of the action that it will not be prejudiced in defending on the merits," Fed. R. Civ. P. 15(c)(1)(C)(i); and *third*, the newly named party must have or should have known that "but for a mistake" made by the plaintiff concerning the newly named party's identity, "the action would have been brought against" the newly named party in the first place, Fed. R. Civ. P. 15(c)(1)(C)(ii). *See also Singletary*, 266 F.3d at 193-94. Critically, the second and third requirements must be satisfied "within the period provided by Rule 4(m) for serving the summons and complaint." Fed. R. Civ. P. 15(c)(1)(C); *see also Urrutia v.*

11

> *Harrisburg Cnty. Police Dep't*, 91 F.3d 451, 458 & n.10 (3d Cir. 1996).

*Id.* at 626.

For the reasons stated below, the Court agrees with CFG that Plaintiff's new negligence claim against the medical provider in Count Five of the Amended Complaint does not arise out of the conduct, transaction, or occurrence set out in the original Complaint. Unlike CFG, the County Defendants fail to brief the relation-back issue. Accordingly, the Court grants the CFG Motion to Dismiss and denies the County Defendants' Motion to Dismiss.

### A. CFG

CFG argues that the claim against it does not arise out of the occurrence set out in the original Complaint because the initial Complaint is focused on the time between Plaintiff's overdose and the medical response when he was allegedly ignored by Hale and before another corrections officer (Gazzero) summoned medical personnel. (CFG Reply Br. at 6). According to CFG, the original Complaint thereby "focused on the denial of medical care to Plaintiff as opposed to inadequate or negligent medical care provided by [CFG] alleged in the Amended Complaint." (*Id.* at 6 ("While temporally close and subject to the same two-year statute of limitations, the Amendment Complaint sets forth an entirely new occurrence as to [CFG].")).

"The Supreme Court has cautioned that courts should not interpret 'conduct, transaction, or occurrence' in such a broad manner so as to construe essentially all amendments as permissible under the relation-back doctrine." *Stokes v. Eldred*, No. 19-20600, 2022 WL 1802882, at *3 (D.N.J. June 2, 2022) (quoting *United States v. Santarelli*, 929 F.3d 95, 101 (3d Cir. 2019)). According to the Third Circuit:

> As we have explained, application of Rule 15(c)(1)(B) normally entails a "search for a common core of operative facts in the two pleadings." *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir.

12

> 2004). Importantly, however, Rule 15(c) is not merely an "identity of transaction test," such as the rules governing joinder of claims or parties. 6A Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1497 (2010). Though not expressly stated, it is well-established that the touchstone for relation back is fair notice, because Rule 15(c) is premised on the theory that "a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide." *Baldwin Cnty. Welcome Ctr. v. Brown*, [466 U.S. 147, 149 n. 3] (1984); *Bensel,* 387 F.3d at 310. Thus, only where the opposing party is given "fair notice of the general fact situation and the legal theory upon which the amending party proceeds" will relation back be allowed. *Bensel,* 387 F.3d at 310. Conversely, amendments "that significantly alter the nature of a proceeding by injecting new and unanticipated claims are treated far more cautiously." *United States v. Hicks*, 283 F.3d 380, 388 (D.C. Cir. 2002).

*Glover v. FDIC*, 698 F.3d 139, 146 (3d Cir. 2012). Put another way, the underlying question for a Rule 15(c) analysis is "whether the *original* complaint adequately notified the defendants of the basis for liability the plaintiffs would later advance in the amended complaint." *Id.* (emphasis in original) (quoting *Meijer, Inc. v. Biovail Corp.*, 533 F.3d 857, 866 (D.C. Cir. 2008)); *see also Dalton v. St. Barnabas Med. Ctr.*, No. 21-5354, 2025 WL 2808156, at *9 (D.N.J. Sept. 30, 2025) ("An amended complaint 'does not relate back . . . when it asserts a new ground for relief supported by facts that differ in both time and type from those in the original pleading set forth.'" (alteration in original) (quoting *Pintor v. Port Auth. of N.Y. & N.J.*, No. 08-2138, 2009 WL 2595664, at *2 (D.N.J. Aug. 20, 2009))).

Plaintiff's new claim in the Amended Complaint against CFG (Count Five) does not relate back to his original Complaint. On the one hand, in his initial Complaint, Plaintiff alleges that Hale, a corrections officer, was deliberately indifferent to his serious medical need under the Eighth Amendment[4] because he failed to "call medical" while Plaintiff was suffering an opioid

---

[4]      Because Plaintiff was a pretrial detainee, a Section 1983 claim regarding his medical treatment arises under

13

overdose and that Cohen, the Warden of the ACJF, likewise violated the Eighth Amendment by failing to establish or enforce adequate policies within the facility to address drug overdoses or related medical emergencies and failing to discipline facility employees who violated established protocols for medical emergencies. (Compl. at 5–6). Plaintiff's original Section 1983 claims against Hale and Cohen thereby implicate the alleged failure by a corrections officer to notify the medical provider's personnel that an inmate is undergoing a serious (and potentially fatal) medical crisis or emergency. On the other hand, in his Amended Complaint, Plaintiff asserts a common law negligence claim against CFG (which allegedly has a duty to the pretrial detainees housed in the facility to ensure adequate medical care and to establish appropriate policies, procedures, and practices for its employees tasked with providing such care to ensure it was provided) based on the alleged failure of CFG's employees (RN Smith and LPN Tucker) to satisfy their "duty to administer appropriate medical care in accordance with the policies and procedures established by CFG" because they did not administer "Narcan to Plaintiff immediately upon finding him unresponsive due to an apparent drug overdose" (and instead merely administered oxygen through a face mask and an electric shock via a defibrillator, monitored Plaintiff's vitals, placed Plaintiff on a stretcher, and instructed an officer to call 911). (Am. Compl. ¶¶ 20–22, 60–64).

Instead of implicating an alleged failure of non-medical correctional staff to alert medical personnel to a serious medical need requiring treatment in violation of the United States Constitution, the new claim asserts that the medical personnel, once notified of the problem, were negligent under state common law in their treatment of the problem. In fact, it is well established that "[t]here is a 'critical distinction' between [Eighth Amendment] claims based on inadequate

---

the Due Process Clause of the Fourteenth Amendment. *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003). But courts analyze such claims using the same deliberate indifference standard that applies under the Eighth Amendment. *See id.* at 581–82.

medical care and claims based on intentional denial or delay of medical care." *Conte v. Goodwin*, No. 19-8333, 2024 WL 3983086, at *7 (D.N.J. Aug. 29, 2024) (noting that, in inadequate medical care claim, courts presume that the medical care provided was adequate and the plaintiff must show that the provider did not exercise professional judgment while there is no presumption that the defendant acted properly in a claim based on intentional denial or delay of medical care).

Accordingly, the Complaint does not provide CFG "fair notice of the general fact situation and the legal theory upon which the amending party proceeds" against this new party in his Amended Complaint, *Bensel,* 387 F.3d at 310.  The initial Complaint actually indicates that proper medical treatment was provided once "medical personnel were summoned," i.e., "First responders administered Narcan to resuscitate plaintiff, who was literally dead at that point."  (Compl. at 5).

"On the face" of the Complaint and the Amended Complaint, *Haar*, 2026 WL 972920, at *3, "the amendment asserts a claim . . . that [does not arise] out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading" under Rule 15(c)(1)(B). The Court **GRANTS** the CFG Motion to Dismiss, and Count Five of the Amended Complaint is **DISMISSED** *with prejudice*.[5]

---

[5]     Plaintiff argues that, in normal circumstances, "the appropriate inquiry in determining whether a complaint amendment relates back to the initial time of filing centers around whether a newly included defendant will be prejudiced by [its] late addition" (or, in other words, whether the newly added defendant would have been in a better position if it had been named in the initial complaint).  (Opp'n Br. to CFG Mot. to Dismiss at 4).  According to Plaintiff, "[w]hat makes the present matter novel is that [CFG] would not have received service any earlier than it did even if Plaintiff had named it in his original complaint," and accordingly any argument that CFG was prejudiced as a result of Plaintiff's failure to name it as a defendant is without merit.  (*Id.*).  However, Plaintiff provides no case law or other authorities to support his theory, and, in any event, Plaintiff's amendment relates back only if it satisfies Rule 15(c)(1)(B).

Plaintiff also contends that, in his December 1, 2023 Order, Magistrate Judge Skahill "explicitly conferred" on Plaintiff the ability to name (and serve) additional defendants.  (*Id.*).  Magistrate Judge Skahill did not conclude that Plaintiff's Amended Complaint related back to the original Complaint for purposes of Rule 15(c)(1)(C).  As CFG notes, (CFG Reply Br. at 3–5), Magistrate Judge Skahill instead denied the *pro se* Motion for Leave to File Amended Complaint, expanded the scope of *pro bono* counsel's representation and directed counsel to determine whether the addition of the proposed new defendants would be futile or otherwise impermissible as well as whether they are consistent with and supported by the legal principles governing Plaintiff's claims, set a deadline for filing any amended complaint naming new defendants (and required Plaintiff's counsel to file a letter prior to this deadline stating whether

**B.      The County Defendants**

Unlike CFG, the County Defendants do not mention the relation-back issue in their briefing.  In fact, although the doctrine had been briefed by both Plaintiff and CFG, (*see* Opp'n to Cnty. Defs. Motion to Dismiss at 5–6; CFG Reply Br. at 5–7), the County Defendants do not address or acknowledge Rule 15(c)(1)(C) in their reply brief.  Instead, the County Defendants raise new arguments, claiming for the first time Plaintiff should not have been permitted to file the Amended Complaint under Federal Rule of Civil Procedure 15(a)(2) because they will be unduly prejudiced by Plaintiff's excessive delay in filing the Amended Complaint and that he has not (and cannot) show good cause for failing to serve the Complaint in a timely fashion.  (Cnty. Defs. Reply Br. at 1–4).  Accordingly, the Court concludes that, for purposes of their pending Motion to Dismiss, the County Defendants have forfeited any argument that the Amended Complaint does not "relate back" to the original Complaint.[6]  Because they thereby fail to meet their burden to establish that "the [A]mended [C]omplaint does not clearly show that [relation back under Rule 15(c)(1)(C) is] closed to Plaintiff," *Haar*, 2026 WL 972920, at *4; *see also In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig.*, 974 F.3d at 231–32, the County Defendants' Motion to Dismiss is **DENIED**.

## IV.   CONCLUSION

For the reasons stated above, the Court **GRANTS** the CFG Motion to Dismiss and **DENIES** the County Defendants' Motion to Dismiss.  Count Five in Plaintiff's Amended

---

Plaintiff would renew his request to file an amended complaint), and extended the deadline to effectuate service of process.  (Dec. 1, 2023 Letter at 3–4).  Significantly, Plaintiff's *pro se* Proposed Amended Complaint does not name CFG as a defendant.  (*See generally* Proposed Am. Compl.).

[6]      Likewise, the Court does not consider the new arguments raised in the County Defendants Reply Brief. *Spence v. New Jersey*, No. 19-21490, 2021 WL 1345872, at *5 (D.N.J. Apr. 12, 2021) ("[I]t is well-established that new arguments cannot be raised for the first time in reply briefs." (quoting *Pitman v. Ottehberg*, No. 10-2538, 2015 WL 179392, at *9 (D.N.J. Jan. 14, 2015)).

Complaint is **DISMISSED** *with prejudice.*

An appropriate Order follows.

**Dated:** _____, **2026**

s/_____
**Esther Salas, U.S.D.J.**